[No. 16821. Department One. April 10, 1922.]

## H. O. MULLINS, *Appellant*, v. S. P. LARSEN *et al.,* *Respondents.*[1]

LOGS AND LOGGING (1)—SALE OF STANDING TIMBER—CONTRACTS— FORFEITURE. A forfeiture of a contract for the sale and removal of standing timber must be on one of the grounds specified in the notice of forfeiture.

SAME (1)—EVIDENCE—SUFFICIENCY. The evidence is insufficient to warrant a forfeiture of a contract for the sale of standing timber, on account of leaving merchantable timber on the ground, where many witnesses testified that it was unmerchantable, and if a breach of the spirit of the contract, the loss was fully covered by an advance payment.

SAME (1)—WAIVER. The seller's right to forfeit a contract for the sale of standing timber to be cut and hauled to the vendee's mill, on the ground of his removal of the mill, is waived by accepting stumpage on shipments elsewhere, as agreed upon.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered January 27, 1921, upon findings in favor of the defendants, in an action on contract, tried to the court. Reversed.

*R. W. Greene,* for appellant.

*Sather & Livesey,* for respondents.

TOLMAN, J.—Appellant, as plaintiff below, brought this action to recover damages for the alleged wrongful forfeiture of a contract for the purchase and removal of timber. From a judgment denying him the relief sought, he has appealed.

It appears that, on October 18, 1918, the parties hereto entered into a written contract by the terms of which respondents, as owners of the land, agreed to convey to appellant all merchantable timber upon certain described real estate, at the agreed price of $1.50 per

[1] Reported in 206 Pac. 4.

thousand feet; the stumpage to be determined by a scale of the lumber cut therefrom at appellant's mill; this scale to be made monthly, on or before the 5th day of each month, of all timber cut during the preceding month, and payment to be made immediately upon the completion of the scale. Appellant, according to the terms of the contract, paid $500 as earnest money in advance, to be credited only upon the stumpage for the timber last to be cut. No time was specified in the contract in which the work of removal of the timber should begin, nor was there any provision requiring the appellant to remove any timber whatever, or any particular portion in advance of any other portion; nor was there any stipulation with reference to the manner or method in which the work of removal of the timber should be conducted. Without objection, appellant began the removal of the timber in May, 1919, and continued to remove and saw it at his mill until October, 1919, without furnishing any scale or paying any part of the stumpage, except as respondents had received from him a small quantity of shingles and wood, the price of which was to apply on the stumpage due. About the end of October, 1919, appellant ceased to operate his mill, began to remove it, and negotiations were then had between the parties which resulted in respondents receiving all of the money then due them for stumpage (though no scale sheets were furnished until the time of the trial below), and an agreement that the logs from respondents' land should thereafter be sold to a third party operating a mill some miles distant; such purchaser to scale the logs and pay to respondents their stumpage monthly. This arrangement was carried on until June, 1920, respondents usually receiving their stumpage money from the purchaser of the logs; but some payments on account

thereof were made by Small & Slater, a copartnership, which, during appellant's operation of his own mill, through some arrangements with him, had done the actual work of cutting and removing the logs. Small & Slater, after the agreement to sell the logs to the third party, continued to cut and transport the logs to the purchaser up until the time when operations ceased. So far as appears, respondents, in the early part of June, received from the purchaser full payment of all stumpage accruing upon all logs so shipped up to June 1, 1920.

It now appears that appellant, by some oral arrangement with Small & Slater, permitted them to proceed with the work of logging under his contract, reserving to himself one dollar per thousand feet on all logs cut and removed, and on or about June 14, 1920, appellant brought suit against Small & Slater, presumably to recover the amount thus due him, and caused a writ of garnishment to issue to, and be served upon, the Belpak Lumber Company, the purchaser of the logs. Small & Slater continued logging operations after the garnishment was served, shipped five cars of logs, and then ceased operations, at about the time the forfeiture notice hereinafter referred to was served. Whether they so ceased to operate because of the pendency of the action in which the garnishment was issued, because of the attempted forfeiture, or because at about that time appellant removed his donkey engine and equipment which they had been using, does not very clearly appear, but there is sufficient, in the absence of evidence to the contrary, to raise the presumption that logging operations ceased because of the acts and attitude of respondents. It does, however, clearly appear, by the testimony of the manager of the Belpak Lumber Company, that the garnishment referred to

had no effect upon the moneys due or to become due respondents for stumpage, and that the mill company afterwards, and before the trial of this action, paid to respondents the stumpage accruing upon the logs shipped during the month of June. On June 19, 1920, respondents caused to be served upon appellant a notice of forfeiture, in which the grounds upon which the claim of forfeiture was based are set forth as follows:

"Some of the reasons for terminating said contract and declaring forfeited the rights of the second party thereunder are as follows:

"That second party cut merchantable timber on the tract of land therein described and has permitted the same to remain in the log and lie on the ground where cut, and the same, has become deteriorated and unmarketable by reason of lying so cut for a long period of time;

"That the second party voluntarily removed the mill where said timber, under said contract, was to be marketed and thereby destroyed the agreed market for said timber in said contract;

"That second party on or about September, 1919, abandoned the said contract and the cutting of said timber thereunder and ceased to perform the conditions of said contract on his part to be performed.

"That second party has cut, removed and sold large quantities of said timber and has never furnished first party any scale of any part thereof, as stipulated should be done.

"You are further notified not to hereafter trespass upon the land described in said contract."

We think it is elemental that, if the attempted forfeiture is upheld, it must be upon some one or more of the grounds specified in the notice, and we have therefore studied the record with the view of determining whether any of such grounds are proven by the evidence. First, does the proof show that appellant, or Small & Slater, left merchantable logs lying in the woods until they became unmerchantable? Appellant

testified that not exceeding 15,000 feet of logs were left on the ground and at the sidings, none of which was merchantable timber. Some, he admits, was piling timber, and half of that amount he says was conky. Appellant's witness Frank testified that about 15,000 feet of logs were cut and left lying, a good part of which were eight inches and less at the butt, and therefore unmerchantable. The large first-growth logs included were all conky, and the only reason these logs were left was because they were not merchantable and would not pay for handling. Appellant's witness Galbraith testified that there was about 25,000 feet of logs left, a considerable part being small and unmerchantable. Some of the large logs were conky, and there were a few pretty good logs left. As to these he said, "It looked to me like they had intended to take them out but hadn't got to them." Witness Puckett testified that there was some merchantable timber cut and left, and gave his opinion that lack of finances was the cause for so leaving the logs. Respondent S. P. Larsen testified that a good deal of merchantable timber was cut and left, but did not count the logs or scale them, and did not pretend to say what, in measurement, they would amount to. Respondents' witness Rothenbuhler testified that, in the first part of the work, the logs were taken fairly clean, but further back he found one soft place, hard to get at, of about an acre in extent, where the logs were cut and bucked but none had been taken out. He did not scale these logs and could not estimate the quantity in feet; and in another place which was hard to reach he saw other logs. On cross-examination this witness testified that most of the logs he saw were such as would be picked up by a logger going ahead with his job.

Conceding, for argument's sake, that respondents protested against the leaving of any merchantable tim-

ber, and that such leaving, if any, was not caused by
the attempted forfeiture, but was a breach of the spirit
of the contract, though not of its expressed terms, yet,
in view of the evidence referred to and the advance
payment of $500, which would amply protect respond-
ents upon final settlement, we cannot hold that a for-
feiture was warranted on this ground.

As to the removal of appellant's mill, given as the
second ground for forfeiture, respondents are in no
position to complain. They, with knowledge of the re-
moval, agreed to the shipment of the logs elsewhere
thereafter, and accepted the stumpage thereon from
the purchaser, thereby waiving any right, if indeed
they ever had a right, to declare a forfeiture therefor.

There is no evidence whatever tending to establish
the abandonment of the contract by appellant, as spe-
cified in the third ground set forth in the forfeiture
notice.

There was some evidence introduced at the trial on
the fourth ground set forth in the forfeiture notice to
the effect that certain cedar logs had been shipped else-
where and no stumpage paid thereon, and the trial
court so found. The forfeiture notice, and the plead-
ings upon this subject, are so general and indefinite
that appellant may well have assumed that the charge
that he had "cut, removed and sold large quantities of
timber without furnishing a scale of any part thereof,"
referred to the time of the early operations when the
timber was cut at his own mill and no scale was fur-
nished; and therefore he may well have been surprised
by the testimony offered. The showing made upon the
motion to reopen the case and upon the hearing of the
motion for a new trial, with reference to the claimed
shipment of cedar logs, was of such a character as to
make it apparent that no final judgment should have

been entered without receiving and considering the evidence thus offered. In that respect we feel that the trial court erred.

The judgment is therefore reversed, and the cause remanded for a new trial, upon which the question of forfeiture shall be limited to the issue last discussed.

PARKER, C. J., FULLERTON, MITCHELL, and BRIDGES, JJ., concur.