[No. 19757. Department One.   June 16, 1926.]

WILLIAM McCUSH, *as Receiver of M. & S. Logging Company, Respondents,* v. WHATCOM TIMBER COMPANY *et al., Appellants.*[1]

[1] APPEAL (414)—REVIEW—VERDICT—CONCLUSIVENESS. The verdict of a jury upon conflicting evidence to the effect that a contract had not been breached will not be disturbed upon appeal when supported by substantial evidence.

[2] LOGS AND LOGGING (1)—SALE OF STANDING TIMBER—CONTRACTS —CONSTRUCTION. A logging contract excepting the northerly portion of one quarter section is not breached by failure to log such portion.

[3] SAME (1)—SALE OF TIMBER—CONTRACTS—BREACH. A logging contract is not breached by failure to log all of a forty before logging another forty, where it merely provided for logging all forty acre tracts contiguously in so far as it does not interfere with the economy of logging.

[4] CONTRACTS (158)—BREACH—DISCHARGE BY BREACH. A notice of forfeiture of a logging contract for nonperformance of its conditions may be treated as a breach of the contract.

[5] CONTRACTS (153-2)—BREACH—DISCHARGE BY INSOLVENCY. The insolvency of a party to a contract is no defense to an action for damages sustained by such party's breach of the contract.

[6] APPEAL (457)—REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE—PREJUDICIAL EFFECT. Error cannot be assigned upon withdrawing from the jury consideration of affirmative defenses and counterclaims, in an action for breach of contract, where there was no competent evidence offered to sustain them.

[7] LOGS AND LOGGING (1)—SALE OF STANDING TIMBER—CONTRACT —BREACH. It is not a breach of a logging contract that a logging road was destroyed, where there was nothing in the contract that the roads should remain intact, and the materials were simply used in the construction of another road for the same purposes.

[8] APPEAL (465)—REVIEW—HARMLESS ERROR—ERROR CURED BY VERDICT. The verdict of a jury establishing that plaintiff was not guilty of unskillful or negligent use of property, cures any error of the court in refusing to admit evidence of the amount of damages claimed therefor.

[1]Reported in 246 Pac. 933.

[9] NEW TRIAL (56)—EXCESSIVE VERDICT—REDUCTION OF EXCESS. It is not error to refuse to set aside a verdict for passion and prejudice in that $10,000 was allowed in excess of the amount which the court permitted to stand, where it appears to have been the result of a mistake in arithmetical computations, not noticed by the court or counsel at the time it was received.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered July 13, 1925, upon the verdict of a jury rendered in favor of the plaintiff, in an action for breach of a logging contract. Affirmed.

*C. E. Abrams, Sather & Livesey,* and *Lester Whitmore,* for appellants.

*Long & Schweppe* and *Hadley & Abbott,* for respondent.

FULLERTON, J.—The M. & S. Logging Company, a corporation organized under the laws of this state, as plaintiff, instituted the present action against the Whatcom Timber Company, the United Timber Company, and the Clipper Shingle Company, as defendants, to recover in damages, as for a breach of contract. Subsequent to the institution of the action, the plaintiff logging company was adjudged insolvent, and the respondent, William McCush, was appointed as its receiver. Thereafter, he was substituted as party plaintiff in the action.

On his substitution as plaintiff, the receiver filed in the action an amended and supplemental complaint, and thereafter a second amended and supplemental complaint, in the latter of which he demanded damages in the sum of $28,641.70. Issue was taken on the last of the complaints by the defendants, and a trial was had before the court sitting with a jury. The jury returned a verdict for the full sum demanded. The trial court deemed the verdict excessive, under the evi-

dence and under its instructions to the jury, and gave the receiver the option of taking a judgment on the verdict for $18,856, or submitting to a new trial. The receiver accepted the first of the alternatives, and a judgment was entered in his favor for the sum named by the court. The defendants appeal from the judgment so entered.

To an understanding of the matters in controversy, a somewhat detailed statement of the facts is necessary. On March 22, 1923, the appellant, Whatcom Timber Company, was the owner of timber on certain described lands situate in Whatcom county. Theretofore, it had entered into a contract with its co-appellant, United Timber Company, for the sale of the land and timber, which contract was then outstanding. The appellant, Clipper Shingle Company, was the owner of a logging outfit, then on the lands mentioned, together with certain rights of way, spur tracks, and leases, all useful in the work of logging and marketing the timber upon the described lands. On the date given, the appellants, acting jointly, entered into a written agreement with the M. & S. Logging Company, by which they agreed to sell to it all of the timber and all of the personal property above described. By the terms of the agreement, the logging company was to enter upon the land, within fifteen days from the date of the agreement, and commence logging the timber thereon, and complete the work on or before December 1, 1924. It was to cut and log all of the merchantable timber thereon, and pay to the appellants for the timber so logged

"  . . .  upon the first 12,000,000 feet of timber cut and logged . . . stumpage . . . at the rate of six ($6.00) dollars per thousand feet, log measure; and upon all of the balance of said timber, over and above

the first 12,000,000 feet at the rate of four and 50/100 ($4.50) dollars per thousand feet, log measure."

It was to pay all of the taxes levied upon the personal property included within the agreement, and one-half the taxes levied upon the land and the timber, during the time it should be conducting its logging operations. It was provided that the stumpage payments should be made on the tenth day of each month for all of the timber cut and logged during the previous month, and that the taxes should be paid as they became due. It was provided that, upon the completion of the logging and upon the payment to the appellants of the sums to become due by the terms of the contract, the property described was to become the property of the logging company.

The contract contained certain special provisions necessary to notice. Concerning the description of the land required to be logged, was this provision:

"Provided, however, that there shall be excepted therefrom and party of the fourth part is under no obligation whatsoever to buy or log that portion of the timber now upon the northerly portion of the South-. west Quarter (SW¼) of Section Twelve (12), which is separate from the main body of the timber herein sold and left standing after previous logging operations."

Paragraph 9 provides:

"It is hereby mutually agreed by and between the parties hereto that the party of the fourth part, in its logging herein contemplated, shall cleanly log all merchantable timber, of whatever kind or character, up to and including eight-inch tops, to be paid for upon the stumpage basis, as hereinabove mentioned."

Paragraph 20 provides:

"The party of the fourth part agrees that it shall conduct its logging operations upon said land in a careful, workmanlike and prudent manner, and in such

manner as to expose the timber remaining upon said premises to the least possible fire risk, and that any portion of said lands upon which logging operations shall be undertaken shall be logged clean of all merchantable timber.''

Paragraph 25 provides:

''It is further understood and agreed that all merchantable timber, whether fir, spruce, cedar, hemlock, or larch, shall be paid for at the price herein stated, and the same shall be logged cleanly and logically, and by forty-acre tracts contiguously, in so far as it does not interfere with the economy of the logging operations. This to include all standing and down timber which is merchantable.''

Paragraph 26 provides:

''Time is the essence of this agreement, and if the party of the fourth part shall fail to pay any part of the purchase price, as herein provided for, at the time when the same shall become due and payable, or shall fail to pay its share of the taxes when payable, according to law, or shall in any way fail to perform any of the terms or conditions herein and hereby imposed upon it, then in such case the party of the first part shall have the right to declare a forfeiture of this contract upon five (5) days' written notice, and to enter upon and take possession of said timber and all items and articles of property set forth in Exhibit 'A,' hereto attached, and all right of way privileges, spur tracks, leases, etc., and any unpaid-for timber cut or removed, wheresoever the same may be situated, and hold and retain the same free and clear of any right, title or interest of the party of the fourth part, and to keep and retain any and all sums which theretofore had been paid on said purchase price as and for liquidated damages for the breach thereof, expressly excluding, however, the right or privilege for forfeiture of the three Mack Trucks heretofore mentioned.''

At the time of the execution of the contract, the logging company paid to the appellants $5,000 in cash and

gave to them its note for $2,000, payable in sixty days, the amounts thereof ($7,000) to be credited on the last payments for timber to become due.

The logging company entered upon the performance of the contract within the time fixed by the contract, and continued in such performance, without hindrance or objection on the part of the appellants, until August 31, 1923, at which time the appellants caused a notice in writing to be served upon the different firms and corporations, to whom the logging company was delivering and selling the logs taken from the land, notifying such purchasers that the appellants claimed the right to receive the purchase price of all logs, theretofore sold and delivered to them by the logging company and which were then unpaid for, and the right to receive the purchase price of all logs thereafter to be delivered to them by the company; notifying them, further, not to pay any part of such purchase price to any one until they should receive further notice from the appellants.

On September 5, 1923, the appellants presented to the president of the logging company a new agreement, for execution on behalf of his company. This, in substance, recited that the logging company had become indebted to the appellants in a large sum for stumpage; that it had failed to comply with the terms of the original contract with respect to clean logging; that it had failed to discharge obligations for which liens could be filed; that it had become largely indebted to others, and was without means of paying the obligations; and that it was without means to enable it to further continue in the logging operations. It named one Joe Alsop, who was the president of the appellant Whatcom Timber Company, as its financial agent, and empowered him to take charge of all of the receipts of

the company, earned and to be earned, and apply them upon the obligations of the company. It provided a salary for the agent, and provided for the payment of all his expenses incurred in the performance of the prescribed services, his necessary bookkeeping and stenographic help, and the fees of his private counsel. It contained no provision for furnishing the financial aid the earlier recitals in the instrument would indicate were necessary. In effect, it took the management of the business from the logging company and vested it in the agent.

The president of the logging company declined to execute the proposed agreement, whereupon the appellants served upon it a notice of forfeiture, pursuant to the 26th paragraph of the original agreement. The notice was as follows:

"To M & S Logging Company, a corporation, and to L. A. Snow, its Treasurer and Manager:

"You and each of you are hereby notified that the undersigned have, and by these presents do, declare a forfeiture of the certain contract made and entered into by and between the undersigned Whatcom Timber Company as party of the first part, United Timber Company, party of the second part, Clipper Shingle Company, party of the third part, and your Corporation, the said M & S Logging Company, party of the fourth part, on March 22, A. D. 1923, because of your failure to keep and perform the certain provisions of said contract whereby you undertook and agreed to pay stumpage for all timber cut and removed by you from the real estate in said contract described, at the price and at the times and upon the terms in said contract set forth, and for your failure to pay and discharge bills owing by you for labor, material and supplies purchased and used in your logging operations under said contract, whereby lien rights have accrued to laborers and material and supply men and concerns through such failure; and because of your failure to carry out the provisions of paragraphs 9, 20, and 25,

of said contract providing for clean logging of all merchantable timber up to and including eight inch tops, and in such manner as to expose timber remaining upon the premises to the least possible fire risk, whereby fire damage has actually occurred to said timber; and your failure to log said timber by forty acre tracts contiguously of all standing and down merchantable timber as provided in said sections.

"This notice is for and of forfeiture of said contract upon five days written notice as in paragraph twenty-six of said contract provided.

"You are hereby notified and directed to quit said premises within five days from the date of service of this notice upon you, not to remove any timber or other property covered by the provisions of said contract therefrom, and to give up and relinquish to the undersigned each and every item of property covered by said contract of March 22, 1923.

"Dated this 5th day of September, A. D., 1923.

"Whatcom Timber Company,
"By Joe Alsop,
"Its Vice President.
"United Timber Company,
"By Lester Whitmore,
"Its Attorney.
"Clipper Shingle Company,
"By Lester Whitmore,
"Its Attorney."

The logging company elected to treat the interference of the appellants with its performance of the contract as a breach of the contract, and, within the time stated in the notice of forfeiture, quit and surrendered to the appellants the possession of the property described and mentioned therein.

To the complaint of the respondent, which embodied the foregoing facts, the appellants answered, denying their liability for the damages alleged to have been suffered, and set up certain affirmative defenses. The first was, that there had been a breach of the contract

on the part of the logging company in the particulars set forth in the notice, and the second was, that the notice of forfeiture was conditionally delivered, to take effect only in the case the differences between the parties could not be amicably adjusted.

By way of counterclaim and set-off, they set up five affirmative defenses. In the first, they alleged an indebtedness due upon the promissory note before described, averring that there was due thereon the sum of two thousand dollars, with interest, and an attorney fee of two hundred fifty dollars. In the second, they claimed damages in the sum of twenty-five hundred dollars, for the damaging of a skyline, a part of the logging equipment. In the third, they claimed damages in the sum of sixty-five hundred dollars, for timber destroyed and rendered valueless, because of the manner in which the logging company had conducted the logging operations. In the fourth, they claimed damages in the sum of three thousand dollars, for the destruction of a logging road. In the fifth, they alleged the insolvency of the logging company, and its consequent inability to carry out the contract. The reply of the respondent put in issue the affirmative matters contained in the answer.

On the trial, the court submitted to the jury the question, whether there had been a breach of the contract on the part of the logging company, instructing them, in substance, that, if they found such a breach, the respondent could not recover, and that their verdict must be for the appellants. The first of the counterclaims, the claim upon the promissory note, it submitted to the jury, instructing them that, if they found in damages for the respondent, the sum due thereon should be deducted from the damages so found, limiting, however, the attorney fee to two hundred dollars.

Each of the other counterclaims, it withdrew from the consideration of the jury.

[1] At the conclusion of the evidence on the part of the respondent, the appellants challenged its sufficiency to sustain a verdict against them, and, after the return of the verdict, moved for judgment in their favor notwithstanding the verdict. The challenge the court refused to sustain, and the motion it overruled, and its rulings in these respects furnish the foundation for the first of the errors assigned. But we find no error with regard to these matters. If the evidence on the part of the respondent is to be believed, and the question was for the determination of the jury, the logging company was not in default, in any of the particulars of the contract, at the time of the appellants' interference. There was nothing then due the appellants on account of stumpage, and the wages of its employees had been met at all of the regular pay-days. There was outstanding a considerable indebtedness for supplies, for which liens could be filed, but there was no evidence that the persons furnishing them were pressing for payment, nor was there evidence that the obligations had been suffered to run to near the end of the lienable period, nor, indeed, was there evidence that the obligations were then overdue. Plainly, we think, the incurrence of the obligations was not so far outside the usual course of business that the court can say, as matter of law, that their incurrence constituted a breach of the contract.

[2] But the appellants say that there was a breach of the contract, because the logging company failed to log certain timber standing on the northerly part of the southwest quarter of section twelve. This timber, it is conceded, was excepted from contract (see paragraph 2), but it is said that the logging company was

required to log it, because it did log a part of the quarter section and, by this act, obligated itself to log the whole of it, under paragraph 20 of the contract. This latter paragraph provides that "any portion of said lands upon which logging operations shall be undertaken shall be logged clean of all merchantable timber," but to say that this clause required the logging company to log the excepted timber is to misconstrue the contract. All of the southwest quarter of section 12 was not excepted. The logging company was obligated to log a portion of it, and the portion only which it was required to log constituted the "said lands" mentioned in the paragraph from which the above quotation is made. By no other construction can full effect be given to all of the terms of the contract. To construe it as the appellants construe it, is to read out of it the exception, as the logging company could not have performed, as it was required to perform, without logging a portion of the southwest quarter of the section named.

[3] The evidence discloses that at least one forty-acre tract was not logged of all of its timber before logging was commenced on another, and the appellants argue that this was a breach of the contract. But we think that the appellants here again misconstrue the contract. The reference is to paragraph 25 of the contract, but it will be noticed that the requirement there is to log "cleanly and logically and by forty-acre tracts contiguously, in so far as it does not interfere with the economy of logging operations." The requirement that the logging be done cleanly by forty-acre tracts was not, it will be seen, absolute, as the appellants' contention would imply. The logging company was given a discretion with respect thereto. It was to be so logged in forty-acre tracts, in so far as it did not

interfere with the economy of the logging operations. Whether, in this instance, it did so interfere, it would seem that the logging company, so long as it exercised its judgment fairly and in good faith, was the sole and exclusive judge. But, conceding that the appellants had a voice in the matter, it was not a question determinable as a matter of law. There was evidence on the question, and this evidence was conflicting; the appellants' evidence showing that it could be economically logged with the forty, of which it formed a part, while the respondent's evidence was to the effect that it could be logged more economically and advantageously in connection with another forty. The question was, therefore, at best one for the jury. It follows from this, that the trial court did not err in refusing to sustain the appellants' challenge to the sufficiency of the evidence, nor err in refusing to grant their motion for judgment notwithstanding the verdict of the jury.

[4] The appellants introduced evidence to the effect that, at the time the notice of forfeiture was served, they stated to the officer representing the logging company that the notice was not intended to be absolute; that they were still willing to negotiate with the logging company concerning the subject matter of the new agreement, which they had theretofore tendered for execution. In the same connection, they offered to show the insolvency of the logging company at the time the contract was entered into, and insolvency on September 5, 1923, the date the notice of forfeiture was served. On the question of conditional delivery of the notice, the court instructed the jury that the logging company was under no legal duty to execute the proposed contract, nor legal duty to negotiate with the appellants concerning it, but, on the contrary, had the right to treat the notice as absolute or to ne-

gotiate further concerning it, at its election, and, having elected to treat it as absolute, its election was obligatory upon the appellants; instructing them further, that the only question for them to determine, on this branch of the case, was, whether the logging company had breached the conditions of the contract it had executed in any of the particulars set forth in the notice of forfeiture. It rejected the evidence offered to prove insolvency. As the appellants took no exception to the courts' instructions, and do not assign error thereon, we are at a loss to understand wherein they can complain of the court's action, even conceding that its action in this respect was error. But, treating the matters as properly before us, we find no error. The instruction correctly stated the law applicable to the situation. The logging company, on the service of the notice, undoubtedly had a choice as to the subsequent course it would pursue. It could ignore the notice and continue with the performance of the work under the contract, or it could treat the appellants' interference with the work as a breach of the contract, and could, of course, treat with the appellants for a new agreement. But the election was its own. It was not obligated to pursue any particular course, and the appellants have no cause of complaint, because it chose to treat the contract as breached by them.

[5] Nor could a showing of insolvency at the times mentioned affect the rights of the logging company. Such a showing would neither compel the logging company to negotiate with the appellants for a new contract, nor would it furnish a ground upon which the appellants could justify a breach of the contract on their part. As was said in *Koppelon v. Ritter Flooring Corp.*, 97 N. J. L. 200, 116 Atl. 491:

"It is also clear that the 'second separate defense' as amended discloses no defense to the action. It sets

forth the same matters contained in the original defense, and adds that, when the time for the defendant to perform arrived, the plaintiff was in fact insolvent, and avers that by reason thereof 'the defendant was warranted in not performing the terms of the said contract.' But we think that the mere insolvency of a party to a building contract (to whom by the terms of the contract labor and materials are to be furnished) does not terminate the contract, in the absence of provisions to that effect therein, nor does it justify the other party in refusing altogether to perform, for it does not follow therefrom that the insolvent party could not and would not perform his part, even though insolvent. *Florence Mining Co. v. Brown*, 124 U. S. 385. It might well be that the insolvent party might find it advantageous and possible to carry out his part of the contract, since insolvency does not necessarily mean a total lack of assets. To hold that mere insolvency of a party puts an end to a contract, and excuses the solvent party from the obligation altogether, would be intolerable. If the mere fact of insolvency terminates a contract, every insolvent contractor would automatically be shorn of all property rights and beneficial interests in contracts. Of course, this cannot be."

It may be that, had the respondent sought to recover prospective profits, the question of the solvency of the logging company would have been pertinent. But there was no question of this sort. Only the accrued damages were sought.

[6] The appellants next complain of the action of the court in withdrawing its counterclaims from the consideration of the jury. It is said in the arguments of the appellants that the court withdrew them, because the matters pleaded as off-sets were not matters included in the notice of forfeiture. If the court's ruling must rest on this ground, it was plainly erroneous. While it may be that the appellants, in justifying a forfeiture of the contract on their part, were confined to proofs of acts set out in the notice of forfeiture

(*Mullins v. Larsen*, 119 Wash. 490, 206 Pac. 4), plainly, we think, they were at liberty, to plead and prove, in mitigation of damages to an action based upon an unwarranted forfeiture of the contract, any negligent or wanton injury to the property committed by the logging company, while the property was in their possession. It must be remembered that the property belonged to the appellants, and that the rights of the logging company in it was the right to its reasonable and ordinary use, until the contract was completed. A breach of the contract by whichsoever party, before the completion of the contract, would not vest title to the property in the logging company. On a breach, the right of possession reverted to the appellants, and manifestly, we think, they could recover from the logging company for any damage done to it, not caused by its reasonable and ordinary use. But, as we read the record, the court did not rest its conclusion on this ground alone. Neither the evidence introduced, nor the evidence offered, showed, or tended to show, a misuse of the property. The skyline broke, while the logging company was using it in the ordinary manner for carrying logs from the place at which they were cut to a place where they could be loaded onto conveyances for transportation to market; a use for which it was intended. There was no competent evidence introduced to show, nor was there an offer to show, that it was being negligently so used, and without this, notwithstanding the breaking lessened its value, there can be no liability on the part of the logging company.

[7]   So with the claim for damages to the logging road. The road was constructed to be used in connection with the logging operations, and was damaged by taking the materials, of which it was composed, and using them in the construction of another road for the

same purposes. There was no agreement or understanding that the roads on the land were to remain intact, and if, in the judgment of the logging company, the logging operations would be facilitated by a change in the roads, it had the right to make the change. There is nothing to show that, in making the change, it did not exercise its best judgment, and, much less, nothing showing, or tending to show, that its acts in so doing were negligent or wanton.

[8] If there was error in the refusal of the court to admit testimony, as to the amount of damages claimed by the appellants to timber caused by negligent and unskilled logging, it was cured by the final result. This was one of the grounds alleged to sustain the right to forfeit the contract, and whether the work was unskillful or negligent was a question submitted to the jury. Their finding, that the logging was being pursued according to the terms of the contract, necessarily includes a finding that there were no damages caused the appellants by reason thereof.

[9] Finally, it is urged that there must be a new trial because the verdict of the jury was the result of passion and prejudice. The verdict was, indeed, some ten thousand dollars larger than the figures given them by the court would permit, but we think the error was the result of a mere mistake in arithmetical computation. The court did not, in its instructions, state to the jury in dollars and cents the sum beyond which they could not go, should they find for the receiver, but gave them figures, from which the result could be reached by a computation. There was thus room for a mistake on the part of the jury, and that the figures were not so plain as to preclude such an idea, is evidenced by another circumstance. The error in calculation was not noticed, either by the trial judge or the attorneys representing the receiver, at the time the

verdict was received, and, if it was noticed by the parties or attorneys on the other side, it was not called to the attention of the trial court by any of them. Plainly, we think, if the error could escape the attention of the learned court and skilled counsel, the jury may be pardoned. The case of *Coles v. McNamara,* 131 Wash. 377, 230 Pac. 430, relied upon by the appellants, is not in point. In that case there was no room for mistake. The verdict returned in that case was in violation of a plain and positive instruction of the court. It might well be held that such a verdict evidenced passion and prejudice without requiring a like conclusion to the verdict here returned. A case more to the point is *Meza v. Pfister Co.,* 54 Wash. 7, 102 Pac. 871, wherein we used this language:

"Appellant assigns as error the order of the court denying a new trial, and in permitting an election between a new trial and a reduction of the verdict, and in reducing the verdict. We think the court properly refused to grant a new trial. The case was fully and fairly tried, and no error is apparent, except the possible error of the jury in fixing a recovery that could not be sustained under the evidence by a mathematical calculation. This the court attempted to correct by his conditional order reducing the verdict. It is contended upon the authority of *State v. Dunlap,* 25 Wash. 292, 65 Pac. 544, and *Roberts v. Sabin,* 14 Wash. 35, 44 Pac. 108, that in a case where an exact calculation is possible and the jury fixes a larger amount, the court has no discretion to correct or amend the verdict conditioned upon acceptance or a new trial, but must grant a new trial. The power of the court in this regard is now generally admitted, and, in the absence of a clear abuse of discretion, its ruling will not be disturbed on appeal. The rule is applied in actions on contract, or for torts to property the value of which may be ascertained or computed in dollars and cents. The authorities upon this subject are collected in 29 Cyc., pages 1020 and 1021.''

See, also, *Winter v. Shoudy,* 9 Wash. 52, 36 Pac. 1049; *Wait v. Robertson Mtg. Co.,* 37 Wash. 282, 79 Pac. 926; *Yarrough v. Hines,* 112 Wash. 310, 192 Pac. 886.

The judgment will stand affirmed.

TOLMAN, C. J., PARKER, HOLCOMB, and MAIN, JJ., concur.